John H. Reichman                                    November 15, 2013
Stella Lee*
WACHTEL MISSRY LLP
One Dag Hammarskjold Plaza
885 Second Avenue, 47th Floor
New York, New York 10017
Tel.   (212) 909-9500
Fax.  (212) 371-0320

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LALIQUE, S.A. and LALIQUE NORTH
AMERICA, INC.,

                              Plaintiffs,          Case No. 13 CV 7033 (RA)

              v.                                   Hon. Ronnie Abrams, U.S.D.J.

METROPOLITAN FINE ARTS &
ANTIQUES, INC.,

                              Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

---

* Application for admission in the Southern District pending.

# TABLE OF CONTENTS

Table of Contents ......................................................................................................... i

Table of Authorities...................................................................................................... ii

Preliminary Statement................................................................................................... 1

Statement of the Case.................................................................................................... 2

Argument ....................................................................................................................... 5

     I.      Legal Standard on a Motion to Dismiss.................................................... 5

     II.     The Complaint Fails to State a Claim for Trademark
           Infringement or False Designation of Origin ......................................... 6

          A.     The Complaint Does Not and Cannot Allege that
                the Purpose of the Serial Numbers Is Quality Control ............... 9

          B.     The Complaint Does Not and Cannot Allege a
                Material Difference ................................................................... 12

     III.    Plaintiffs' Trademark Dilution Claims Should Be Dismissed ............... 13

     IV.    The Complaint Does Not State a Claim under GBL § 349................................... 15

     V.     The Complaint Does Not State a Claim under GBL § 360-l ............................... 16

     VI.    Plaintiffs' Unfair Competition Claims Should Be Dismissed.............................. 17

Conclusion ................................................................................................................... 18

# TABLE OF AUTHORITIES

Cases...................................................................................................................Page(s)

A&G Healthplans, Inc. v. Nat'l Network Servs., Inc.,
   No. 99 CV 12153(GBD), 2003 WL 1212933 (S.D.N.Y. Mar. 14, 2003)................................. 17

Adams v. Grand Slam Club/Ovis,
   No. 12-CV-2938-WJM-BNB, 2013 WL 1444335 (D. Colo. Apr. 9, 2013) ................................ 8

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)........................................................................................................ 5, 8

Ballet Makers, Inc. v. United States Shoe Corp.,
   633 F.Supp. 1328 (S.D.N.Y. 1986) ............................................................................... 6

Bel Canto Design Ltd. v. MSS Hifi, Inc.,
   837 F.Supp.2d 208 (S.D.N.Y. 2011)............................................................................ 12

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)...................................................................................................... 5

Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC,
   562 F.3d 1067 (10th Cir. 2009) .................................................................................. 12

Bourdeau Bros, Inc. v. Int'l Trade Comm'n,
   444 F.3d 1317 (Fed. Cir. 2006) .................................................................................. 13

Brain Pharma, LLC v. Scalini,
   858 F.Supp.2d 1349 (S.D. Fla. 2012)................................................................... passim

Carnegie-Mellon Univ. v. Cohill,
   484 U.S. 343 (1988)................................................................................................... 15

Food Sciences Corp. v. Nagler,
   No. CIV. 09-1798 JBS KMW, 2010 WL 4226531 (D.N.J. Oct. 20, 2010) ............................... 6

Dan-Foam A/S v. Brand Named Beds, LLC,
   500 F.Supp.2d 296 (S.D.N.Y. 2007) ................................................................... passim

E. Am. Trio Products, Inc. v. Tang Elec. Corp.,
   97 F.Supp.2d 395 (S.D.N.Y. 2000) ........................................................................... 16

Gap, Inc. v. G.A.P. Adventures Inc.,
   No. 07-CV-9614, 2011 WL 2946384 (S.D.N.Y. June 24, 2011)................................. 14

Gen. Ins. Co. of Am. v. Mezzacappa Bros., Inc.,
   No. 01-CV-7394 (FB), 2003 WL 22244964 (E.D.N.Y. Oct. 1, 2003) ..................................... 11

GTFM, Inc. v. Solid Clothing, Inc.,
   215 F.Supp.2d 273 (S.D.N.Y. 2002) ...................................................................................... 14

H.L. Hayden Co. of New York, Inc. v. Siemens Medical Sys., Inc.,
   879 F.2d 1005 (2d Cir. 1989) ............................................................................................... 9

Hormel Foods Corp. v. Jim Henson Productions, Inc.,
   73 F.3d 497 (2d Cir. 1996) ................................................................................................... 16

Keller v. United States,
   58 F.3d 1194 (7th Cir. 1995) ............................................................................................... 10

Kolari v. New York-Presbyterian Hosp.,
   455 F.3d 118 (2d Cir. 2006) ................................................................................................. 15

L'Oreal USA, Inc. v. Trend Beauty Corp.,
   No. 11 Civ. 4187(RA), 2013 WL 4400532 (S.D.N.Y. 2013) ............................................. 1, 9, 16

Louis Vuitton Malletier v. Dooney & Bourke, Inc.,
   454 F.3d 108 (2d Cir. 2006) ................................................................................................. 7

Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.,
   No. 07 CIV.6959 (DAB), 2009 WL 4857605 (S.D.N.Y. Dec. 14, 2009)............................ 8, 16

Osawa & Co. v. B & H Photo,
   589 F.Supp. 1163 (S.D.N.Y. 1984) ...................................................................................... 8

Playboy Enterprises, Inc. v. Universal Tel-A-Talk, Inc.,
   No. CIV. A. 96-CV-6961, 1998 WL 288423 (E.D. Pa. June 3, 1998) ................................. 7

Polymer Technology Corp. v. Mimran (Polymer I),
   975 F.2d 58 (2d Cir. 1992) ................................................................................................... 1, 9

Polymer Technology Corp. v. Mimran (Polymer II),
   37 F.3d 74 (2d Cir. 1994) ..................................................................................................... 2, 11

Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC,
   760 F.Supp.2d 384 (S.D.N.Y. 2011).................................................................................... 5, 6, 13

Prof'l Sound Servs., Inc. v. Guzzi,
   349 F.Supp.2d 722 (S.D.N.Y. 2004) .................................................................................... 15

Purgess v. Sharrock,
   33 F.3d 134 (2d Cir. 1994) ................................................................................................... 11

Reese Publ'g Co. v. Hampton Int'l Comm'cns, Inc.,
    620 F.2d 7 (2d Cir. 1980) ........................................................................................... 15

SKF USA, Inc. v. Int'l Trade Comm'n,
    423 F.3d 1307 (Fed. Cir. 2005) ........................................................................... 2, 13

Software for Moving, Inc. v. Frid,
    No. 09 CIV 4341 DLC, 2010 WL 2143670 (S.D.N.Y. May 27, 2010) ................................... 13

Stutman v. Chemical Bank,
    95 N.Y.2d 24 (2000) ................................................................................................. 15

Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.,
    922 F. Supp. 299 (C.D. Cal. 1996) ............................................................................... 6

TechnoMarine SA v. Jacob Time Inc.,
    905 F.Supp.2d 482 (S.D.N.Y. 2012) .............................................................. *passim*

Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC,
    221 F.Supp.2d 410 (S.D.N.Y. 2002) ........................................................................ 16

United Mine Workers v. Gibbs,
    383 U.S. 715 (1966) ................................................................................................. 15

United States v. Margiotta,
    662 F.2d 131 (2d Cir. 1981) ....................................................................................... 10

Warner-Lambert Co. v. Northside Dev. Corp.,
    86 F.3d 3 (2d Cir. 1996) .............................................................................................. 9

Zino Davidoff, SA v. CVS Corp.,
    571 F.3d 238 (2d Cir. 2009) ..................................................................................... 1, 9

Statutes

15 U.S.C. § 1125 .......................................................................................................... 14

15 U.S.C. § 1127 ............................................................................................................ 7

N.Y. Gen. Bus. Law § 349 ................................................................................. 14, 15, 16

N.Y. Gen. Bus. Law § 360-l ........................................................................................ 16

**PRELIMINARY STATEMENT**

Plaintiffs Lalique, S.A. and Lalique North America, Inc. (collectively "Lalique") assume in their complaint that selling Lalique vases without serial numbers makes them counterfeit and non-genuine *per se*. This is not the law. To state a claim, Lalique must plausibly allege that the absence of serial numbers (1) defeats Lalique's substantial "quality control" procedures, or (2) renders the goods "materially different" authorized by Lalique. It has not pleaded, and cannot meet, either of these standards.

Defendant Metropolitan Fine Arts & Antiques ("Metropolitan") operates a single store in Manhattan where it sells Lalique products, including vases (the "Vases"). While repeating and summarily asserting that the Vases are "counterfeit," the complaint does ***not*** allege that the Vases were not manufactured by Lalique, were of inferior quality, or bore falsified marks. Instead, Lalique alleges only that Metropolitan is not an authorized Lalique retailer, (cplt., ¶ 27), and that vases offered without serial numbers "are by definition counterfeit and non-genuine Lalique goods," (id., ¶ 33).

"As a general rule, trademark law does not reach the sale of genuine goods even though the sale is not authorized by the mark owner." <u>Polymer Technology Corp. v. Mimran</u>, 975 F.2d 58, 61 (2d Cir. 1992) ("<u>Polymer I</u>"). Goods are only considered to be non-genuine, and their re-sale a trademark violation "'if they do not conform to the trademark holders' legitimate quality control standards or if they differ materially from the product authorized by the trade holder for sale.'" <u>L'Oreal USA, Inc. v. Trend Beauty Corp.</u>, No. 11 Civ. 4187(RA), 2013 WL 4400532, *14 (S.D.N.Y. 2013) (Abrams, J.) (quoting <u>Zino Davidoff, SA v. CVS Corp.</u>, 571 F.3d 238, 243 (2d Cir. 2009)).

The complaint does not allege that the serial numbers were imprinted for quality control

purposes, nor does it allege that vases without serial numbers differ materially from the product authorized by Lalique for sale. Further, plaintiffs cannot meet either standard because Lalique does *not*, as it claims, imprint "every vase" with a serial number. While the complaint falsely alleges that every Lalique vase has such a number, plaintiffs admitted at the conference on their motion for preliminary injunctive relief that this was not the case. This judicial admission is fatal to Lalique's claims. To claim that the absence of information (such as serial numbers) is likely to create consumer confusion in violation of trademark laws, the mark holder must require that this information be on all or substantially all of the goods it approves for the marketplace. Polymer Technology Corp. v. Mimran, 37 F.3d 74, 78 (2d Cir. 1994) ("Polymer II") ("Polymer's claims are belied by the fact that Polymer itself placed a product… into the retail market that did not contain the information that Polymer now claims must be on the retail products"); SKF USA, Inc. v. Int'l Trade Comm'n, 423 F.3d 1307, 1315 (Fed. Cir. 2005) (plaintiff "must establish that all or substantially all of its sales are accompanied by the asserted material difference in order to show that its goods are materially different").

Because Lalique sells vases without serial numbers, it cannot claim that Metropolitan's sale of vases without serial numbers is a trademark violation.

## STATEMENT OF THE CASE

### The Complaint

Plaintiffs' complaint, annexed as Exhibit A to the accompanying Declaration of John H. Reichman (the "Reichman Decl."), alleges the following:

Plaintiffs are in the business of manufacturing and distributing crystal vases and other decorative items under the Lalique mark. (Cplt., ¶ 19). Lalique supposedly sells its products through 169 authorized Lalique sellers in the United States. (Id., ¶ 22).

Case 1:13-cv-07033-RA-RLE   Document 16   Filed 11/15/13   Page 8 of 23

Metropolitan operates a fine art and antiques store (the "Store") at 10 West 57th Street New York, New York. (Id., ¶ 13). Metropolitan is not an authorized Lalique retailer. (Id., ¶ 27). Metropolitan has been selling Lalique products for many years without complaint. (See, e.g., [ECF Doc. 8], 10/24/13, Gildin letter to court).

From June through August 2013, three Lalique representatives visited the Store "to determine the nature of the goods being offered for sale by the Defendant under the LALIQUE trademark." (Cplt., ¶ 32). On the basis of these visits, plaintiffs repeatedly and summarily allege that Metropolitan sold "counterfeit" vases. Lalique provides no support for these assertions. The Lanham Act defines a "counterfeit" as a "spurious mark which is identified with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The complaint does not allege the use of a spurious mark, the alteration of Lalique's marks, nor, for that matter, that the Vases were not manufactured by Lalique. Instead, plaintiffs allege that Lalique imprints "every vase" with a serial number, (cplt., ¶ 24), which the Vases offered for sale by Metropolitan did not have. (Id., ¶ 32).

Lalique's theory is that the Vases without serial numbers "are by definition counterfeit and not genuine Lalique goods." (Id., ¶ 33). As explained below, the law is to the contrary. Whether the lack of a serial number could constitute a trademark violation depends on whether (i) the serial numbers are for "quality control" purposes or (ii) the products differ materially from those authorized by Lalique. The complaint does not even mention the words "quality control," and alleges no facts that would make it plausible to infer that the absence of serial numbers would make a material difference to a consumer purchasing the Vases. Instead, the complaint devotes all of one sentence to the purpose for the serial numbers:

> The serial number enables Lalique and its authorized retailers to establish the authenticity of each Lalique vase, to establish the date and location of its production, and track its distribution.

(Id., ¶ 24).

We now know with certainty that this cursory and inadequate explanation is false and misleading, and that the presence of serial numbers does not "establish the authenticity of each Lalique vase." As plaintiffs' counsel admitted at the conference on plaintiffs' proposed motion for preliminary injunctive relief—and as a visit to any Lalique store will confirm—each Lalique vase does *not* have a serial number. (Reichman Decl., ¶ 4).

Finally, the complaint does not allege any actual confusion by the purchasing public or customer complaints. Instead, plaintiffs once again summarily allege the "acts of Defendant complained of herein are likely to cause customer confusion." (Id., ¶ 39).

The complaint contains six causes of action under federal and state law: (1) trademark infringement under the Lanham Act § 32; (2) false designation of origin under the Lanham Act § 43(a); (3) dilution under § 43(c) of the Lanham Act; (4) deceptive practices under New York General Business Law ("GBL") § 349; (5) dilution under GBL § 360-l; and (6) common law trademark infringement and unfair competition.

**The Motion for Preliminary Injunctive Relief**

Simultaneously with serving the complaint, Lalique moved for preliminary injunctive relief. In their moving brief, plaintiffs admit to having no evidence to support their claims that the Vases were 'counterfeit.' (See Pls.' Br. at 20 ["Lalique does not have sufficient information to comment on the quality of the goods being offered by Defendant under the Lalique trademarks, the fact that the goods do not contain Lalique's serial number alone renders them inferior."]). Of course, Lalique had more than ample opportunity to determine whether Metropolitan's vases

were manufactured by Lalique; its CEO, employees and investigators went to the Store to buy and examine the products Metropolitan sold. The obvious reason that none of Lalique's declarants would comment on the "quality of the goods being sold" is that they would then have to admit that the Vases were genuine Lalique merchandise.

At the conference on plaintiffs' proposed motion, defendants produced for the Court's inspection Lalique vases, bought from a Lalique store, which did not have serial numbers. Plaintiffs' counsel then admitted that all Lalique vases do not have serial numbers. (Reichman Decl., ¶ 4).

## ARGUMENT

## I.    LEGAL STANDARD ON A MOTION TO DISMISS

To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "[W]hile Rule 8 marks a notable and generous departure from hyper-technical, code pleading regime of a prior era, it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. (internal punctuation omitted)

Federal courts have not hesitated to dismiss trademark claims which have done nothing more than summarily plead that goods are "counterfeit" or "non-genuine." TechnoMarine SA v. Jacob Time Inc., 905 F.Supp.2d 482 (S.D.N.Y. 2012); Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC, 760 F.Supp.2d 384 (S.D.N.Y. 2011); Brain Pharma, LLC v. Scalini,

858 F.Supp.2d 1349 (S.D. Fla. 2012); <u>Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.</u>, 922 F. Supp. 299 (C.D. Cal. 1996); <u>see also</u> <u>Ballet Makers, Inc. v. United States Shoe Corp.</u>, 633 F.Supp. 1328 (S.D.N.Y. 1986) (dismissing trademark claims as a matter of law).

Furthermore, where customer confusion is a required to state a claim, the complaint must set forth the underlying factual bases for reaching the conclusion that the requirement is met. As explained by the district court in <u>Food Sciences Corp. v. Nagler</u>,

> when an element of a claim involves some abstract fact, including those dealing with mental states such as questions of intent or likelihood of confusion, the factual conclusion cannot simply be asserted in the complaint, but must be sufficiently grounded in more concrete factual allegations. And if the conclusion is not a reasonable inference from the alleged facts, it may be disregarded. The Court does not credit conclusory allegations of ultimate facts in determining whether the Complaint states a claim.

CIV. 09-1798 JBS KMW, 2010 WL 4226531, at *2 (D.N.J. Oct. 20, 2010) (internal citations omitted). <u>Accord</u> <u>TechnoMarine</u>, 905 F.Supp.2d at 492 ("To plausibly allege confusion, plaintiff would have to allege additional facts to show confusion based on differences in warranty coverage or interference with quality control procedures."); <u>Prince of Peace</u>, 760 F.Supp.2d at 395 (dismissal warranted where complaint "fails to allege that the goods in question were different at all").

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR TRADEMARK INFRINGEMENT OR FALSE DESIGNATION OF ORIGIN

To state a trademark infringement claim, a plaintiff must show that (1) it has a valid mark entitled to protection under the Lanham Act and that (2) the defendant's use of the mark in commerce is likely to cause consumer confusion as to the source or affiliation of the goods in question. <u>See</u> 15 U.S.C. § 1114(1)(a). The same analysis applies to plaintiffs' second cause of action for false designation of origin under Section 43 of the Lanham Act. <u>Louis Vuitton</u>

Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 114 (2d Cir. 2006).

To determine whether plaintiff has pled claims for trademark infringement or false designation of origin therefore depends on the adequacy of the allegations with respect to consumer confusion. E.g., TechnoMarine, 905 F.Supp.2d at 487. As noted above, plaintiffs attempt to meet this burden by alleging that they "imprint[] every vase… with a unique Lalique serial number," and that "[a]ny purported Lalique vase… without an imprinted serial number is not a genuine Lalique vase." (Cplt. ¶ 24). The complaint then goes on to conclude that "[b]ecause the goods offered for sale do not contain a unique Lalique serial number, they are by definition counterfeit and not genuine Lalique goods." (Id., ¶ 33).

The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. To state a claim for counterfeiting, a plaintiff must state a claim for trademark infringement. See Playboy Enterprises, Inc. v. Universal Tel-A-Talk, Inc., No. CIV. A. 96-CV-6961, 1998 WL 288423, *3 (E.D. Pa. June 3, 1998) ("The only material difference between these two standards is that to obtain treble or statutory damages for trademark counterfeiting, a plaintiff must prove the defendant intentionally used the plaintiff's trademark, knowing it was a counterfeit as defined in § 1116(d)(1)(B)."). Courts determining whether goods are counterfeit, such that consumer confusion may be inferred therefrom, find "a prima facie case is satisfied where the plaintiff made evidentiary allegations based on falsified logos, inferior workmanship and materials, and combinations of colors and markings not found in a non-counterfeit product." TechnoMarine, 905 F.Supp.2d at 488 (citations omitted).

Here, the Complaint is devoid of any allegations supporting its claim of "counterfeit" goods. It does not allege that the vases were not manufactured by Lalique; it does not allege that

there was falsified logo; and it does not allege inferior workmanship and materials. Despite self-servingly referring to the vases as "counterfeit" throughout the complaint, plaintiffs' bare legal conclusions do not suffice. Iqbal, 556 U.S. at 678; and see, e.g., Adams v. Grand Slam Club/Ovis, No. 12-CV-2938-WJM-BNB, 2013 WL 1444335, *7 (D. Colo. Apr. 9, 2013) ("to plead a counterfeiting claim, Plaintiff must do more than make conclusory allegations that 'Defendants' use of the [] mark is identical,' and that Defendants' use 'was and is a counterfeit mark because it is a counterfeit of a mark that is registered' for the same goods"); Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd., No. 07 CIV.6959 (DAB), 2009 WL 4857605, *7 (S.D.N.Y. Dec. 14, 2009) ("Although the Second Amended Complaint alleges that '[u]pon information and belief' the Licensor Defendants knowingly participated in the development, promotion and sale of the counterfeit links, [] such allegations are again conclusory under Iqbal.")

Plaintiffs also allege that Metropolitan advertised a sale of Lalique goods marked down by 50% from the retail price, (cplt., ¶¶ 30, 31, 34), and that "[n]either [Metropolitan] nor any of Lalique's authorized retailers in the United States are authorized to sell Lalique goods at a 50% discount." (Id., ¶ 28). However, merely alleging that Metropolitan was not authorized to sell the Vases "for less than 50% below retail prices does not state a trademark infringement claim." Brain Pharma, LLC, v. Scalini, 858 F.Supp.2d 1349, 1354-55 (S.D. Fla. 2012) (quoting Osawa & Co. v. B & H Photo, 589 F.Supp. 1163, 1173 (S.D.N.Y. 1984) (under the first sale doctrine, "a markholder may no longer control branded goods after releasing them into the stream of commerce…. Down the line retailers are free to display and advertise the branded goods. Secondhand dealers may advertise the branded merchandise for resale in competition with the sales of the markholder"), abrogated on other grounds by Olympus Corp. v. United States, 792

8

F.2d 315 (2d Cir. 1986)).

Indeed, "[a]s a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner," Polymer I, 975 F.2d at 61, because an unauthorized sale of genuine goods "does not inherently cause confusion or dilution." Zino Davidoff, 571 F.3d at 243; L'Oreal, 2013 WL 4400532 at *14. See also, e.g., H.L. Hayden Co. of New York, Inc. v. Siemens Medical Sys., Inc., 879 F.2d 1005, 1023 (2d Cir. 1989) ("the unauthorized sale of a trademarked article does not, without more, constitute a Lanham Act violation"). Goods are only considered to be non-genuine and their sale a trademark violation "if they do not conform to the trademark holder's legitimate quality control standard; or if they differ materially from the product authorized by the trademark holder for sale." L'Oreal, 2013 WL 4400532 at *17 (quoting Zino Davidoff, 571 F.3d at 293).

### A.    The Complaint Does Not and Cannot Allege that the Purpose of the Serial Numbers Is Quality Control

To establish that a sale does not conform to quality control standards, a trademark holder must show that "(i) the asserted quality-control procedures must be established, legitimate, substantial, and non-pretextual; (ii) *the owner must abide by these procedures*; and (iii) sales of products that fail to conform to these procedures will diminish the value of the mark." Warner-Lambert Co. v. Northside Dev. Corp., 86 F.3d 3, 6 (2d Cir. 1996) (emphasis added).

Here, the complaint does not even mention quality control. As noted above, the complaint contains a single sentence describing the reasons for the serial number.

> the serial number enables Lalique and its authorized retailers to establish the authenticity of each Lalique vase, to establish the date and location of its production, and to track its distribution.

(Cplt., ¶ 24) (emphasis added).

Plaintiffs' vague reference to "authenticity"—without providing any *facts* showing that

9

Lalique has any internal quality controls measures in place, that Plaintiffs abide by them, or a diminution of the value of the Lalique mark—is legally insufficient. Brain Pharma, 858 F.Supp.2d at 1355 ("in the absence of specific, non-conclusory factual allegations which allege that the products sold by Defendants do not meet Plaintiff's standard quality control measures, the Court finds that Plaintiff has failed to state a claim for trademark infringement"). Indeed, even a *nominal* reference to the existence of quality controls is insufficient where a plaintiff fails to more "specifically allege an actual disruption in quality control procedures and how such disruption has or would be likely to damage the product itself and thus impact the value of the mark." TechnoMarine, 905 F.Supp.2d at 490-91 (complaint failed facial plausibility, alleging only that watches "undergo a strict quality control procedure" and that the watch sold by defendant "did not undergo this quality control procedure").

Further, we now know that the entire premise underlying Plaintiffs' complaint—that all Lalique vases do not have serial numbers—is false. The statement by plaintiffs' counsel that all Lalique vases do not have serial numbers is a judicial admission. Judicial admissions are concessions or stipulations by a party or its counsel that are binding and conclusive against the party making them. Keller v. United States, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). Judicial admissions obviate the need for debate, discussion or discovery regarding particular factual issues because the parties make concessions or stipulations regarding those issues that remove them from dispute. Id. ("Indeed, they are not evidence at all but rather have the effect of withdrawing a fact from contention.") (citations and quotations omitted).

It is well-established that "statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." United States v. Margiotta, 662 F.2d 131, 142 (2d Cir. 1981); Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir.

10

1994) (same). An attorney's concession to the court at oral argument constitutes a binding judicial admission that effectively renders the matter "undisputed." Gen. Ins. Co. of Am. v. Mezzacappa Bros., Inc., No. 01-CV-7394 (FB), 2003 WL 22244964, *5 (E.D.N.Y. Oct. 1, 2003) (collecting cases), aff'd, 110 F. App'x 183 (2d Cir. 2004).

Lalique's judicial admission that it does not uniformly put serial numbers on its vases means that it cannot meet this Circuit's quality control standard. See generally Polymer II, 37 F.3d at 78-81. In Polymer, the plaintiff distributed lens care products to retailers with one type of packaging and to distributors with different information and packaging. Plaintiff claimed that the defendant, an unauthorized retailer, repackaged the products and did "not meet its quality control standards for retail products because the kits lack ingredients statements, warnings and anti-tampering seals required by the FDA." Polymer II, 37 F.3d at 78.

The District Court rejected this claim finding "that Polymer's claims were belied by the fact that Polymer itself placed a product (the Combination Pack) into the retail market that did not contain the information that Polymer now claims must be on all retail products." Id. The Second Circuit affirmed, finding that "Polymer itself introduced a product in the retail market containing an outside label with less information than that included on the outside labels on the professional kits. Id. at 79. It thus held that the changed label did not violate Polymer's own quality control standards and was not a trademark violation. Id.; see also Dan-Foam A/S v. Brand Named Beds, LLC, 500 F.Supp.2d 296, 315-16 (S.D.N.Y. 2007) ("In order to succeed in an action for trademark infringement or dilution based on the quality control theory, however, a trademark owner must be able to show that it actually follows the quality control procedures it alleges.").

Simply put, when a trademark holder does not "abide by [its own] procedures" it cannot

meet the test established in Warner-Lambert for showing that there has been a violation of the holder's quality control standards.

### B.    The Complaint Does Not and Cannot Allege a Material Difference

Plaintiffs also have not, and cannot, meet the material difference standard.

A plaintiff can meet the "material difference" exception where there are physical differences, such as a change in appearance or there are services or warranties that would have been provided to the consumer in an authorized sale. See, e.g., Dan-Foam, 500 F.Supp.2d at 320. For example, the removal of serial numbers constitutes a "material difference" where the removal has resulted in the customers receiving an inferior product that did not have the same protections as a "genuine" article. Cf. Bel Canto Design Ltd. v. MSS Hifi, Inc., 837 F.Supp.2d 208 (S.D.N.Y. 2011) (altered serial numbers can violate trademark laws where serial numbers are used "to identify defective components and institute targeted recalls" and because of the "unavailability of warranty and other service stemming from the serial number alterations.").

No such facts are pleaded here. The complaint does not allege that Lalique has a warranty program, that the removal of the serial numbers would change that warranty program, or that the serial numbers are used to identify defective products.

The complaint also does not explain how the presence or absence of serial numbers would be material to an ordinary consumer. "[N]ot every difference between a product in its first sale state and a second sale product is material," and the "guiding principle" in evaluating materiality is "whether the difference 'confuses consumers and impinges on the… trademark holder's goodwill." Bel Canto, 837 F.Supp.2d at 223 (internal quotations omitted) (citing Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562 F.3d 1067, 1072-73 (10th Cir. 2009)). Lalique's failure to allege a single fact to support the material difference exception

requires dismissal of the complaint. TechnoMarine, 905 F.Supp.2d at 488 (rejecting "plaintiff's assertion that watches sold by unauthorized dealers were necessarily non-genuine for purposes of the Lanham Act"); Prince of Peace, 760 F.Supp.2d at 395 (dismissing Lanham Act claim where, "[i]f anything the [complaint] indicates that the products were equivalent"); and see generally Software for Moving, Inc. v. Frid, 09 CIV 4341 DLC, 2010 WL 2143670, *2 (S.D.N.Y. May 27, 2010) ("a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do") (quoting Iqbal, 556 U.S. at 678).

But even more importantly, the absence of a serial number cannot constitute a material difference from the products authorized by Lalique because Lalique itself makes and sells products without serial numbers. "[A] plaintiff in a grey market trade infringement case must establish all or substantially all of its sales are accompanied by the asserted material difference in order to show that its goods are materially different." SKF USA, 423 F.3d at 1315. See also Bourdeau Bros, Inc. v. Int'l Trade Comm'n, 444 F.3d 1317 (Fed. Cir. 2006). The reason for this rule is self-apparent, there cannot be either a difference in products or customer confusion when a grey market sells products with the same characteristics as products sold by the trademark holder. See, e.g., Dan-Foam, 500 F.Supp.2d at 313 ("to permit recovery by a trademark owner when less than 'substantially all' of its goods bear the material difference from the gray goods thus would allow the owner itself to contribute to the confusion by consumers that it accuses gray market importers of creating") (quoting SKF USA, 423 F.3d at 1315); Bourdeau Bros., 449 F.3d at 1324.

The failure of Lalique to put serial numbers on all its vases is fatal to its claims.

## III.   PLAINTIFFS' TRADEMARK DILUTION CLAIMS SHOULD BE DISMISSED

Plaintiffs cannot show trademark dilution because there is no material difference between

the vases Lalique sells and Metropolitan and there is no showing of likely customer confusion.

To establish dilution under federal law, a plaintiff must show that: (1) its mark is famous; (2) the defendant's use of the mark is made in commerce; (3) the defendant used the mark after the mark was famous; and (4) the defendant's use of the mark is likely to dilute the quality of the mark by blurring or tarnishment. See, e.g., Gap, Inc. v. G.A.P. Adventures Inc., No. 07-CV-9614, 2011 WL 2946384, *16 (S.D.N.Y. June 24, 2011). "Dilution by blurring" is defined as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). "Dilution by tarnishment" is defined as "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C).

"In a typical gray goods trademark case, a cause of action for trademark infringement or dilution arises when (1) 'material differences' exist between the goods sold by the trademark holder and its authorized or licensed dealers and those sold by the unauthorized dealer, and (2) the unauthorized dealer sells the materially different trademarked goods in a manner that would be likely to cause consumer confusion, and/or dilute the strength of the trademark owner's mark." Dan-Foam, 500 F.Supp.2d at 299-300.

Accordingly, similar to a claim for infringement, to show trademark dilution, plaintiffs must show a material difference between the products sold by Metropolitan and those authorized by Lalique. E.g., Brain Pharma, 858 F.Supp.2d at 1358 ("[m]erely reselling Plaintiff's genuine products at a discounted price does not constitution dilution") (citing GTFM, Inc. v. Solid Clothing, Inc., 215 F.Supp.2d 273, 301 (S.D.N.Y. 2002)). Because it cannot show a likelihood of customer confusion by any standard, Lalique's trademark dilution claims should be dismissed.

**IV.     THE COMPLAINT DOES NOT STATE A CLAIM UNDER GBL § 349**

First, if the Court dismisses plaintiffs claims under the Lanham Act, it should not retain

jurisdiction over plaintiffs' remaining claims, which do not involve any federal question. A

federal court's exercise of supplemental jurisdiction is "a doctrine of discretion, not a plaintiff's

right." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Thus, in most cases where all

federal claims have been dismissed before trial, "the balance of factors… will point toward

declining to exercise jurisdiction over the state-law claims." Carnegie-Mellon Univ. v. Cohill,

484 U.S. 343, 350 n.7 (1988); accord Gibbs, 383 U.S. at 726 ("if the federal claims are dismissed

before trial… the state claims should be dismissed as well"). See also Kolari v. New York-

Presbyterian Hosp., 455 F.3d 118, 123 (2d Cir. 2006) (district court abused discretion in

exercising supplemental jurisdiction over state law claims following dismissal of all original

jurisdiction claims under federal law). Prof'l Sound Servs., Inc. v. Guzzi, 349 F.Supp.2d 722,

736 (S.D.N.Y. 2004) (dismissing state law claims) (citing Reese Publ'g Co. v. Hampton Int'l

Comm'cns, Inc., 620 F.2d 7, 13 (2d Cir. 1980) (holding that when a Lanham Act claim is

dismissible upon motion, state law claims should be dismissed)), aff'd, 159 F. App'x 270 (2d Cir.

2005).

Second, the complaint also fails to state a cause of action under GBL § 349. A plaintiff

under GBL § 349 must prove: (1) that the challenged act or practice was consumer-oriented; (2)

that it was misleading in a material way; and (3) that the plaintiff suffered injury as a result of the

deceptive act. Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (2000). To come within the statute,

the complained-of conduct must be "likely to mislead a reasonable consumer acting reasonably

under the circumstances." Id.

However, the "majority view in this Circuit is that trademark… infringement claims are

not cognizable under [Section 349] unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution. For example, an alleged injury of confusion and deception of the consuming public… is not distinct from the very harm that trademark laws generally seek to redress and thus is not over and above ordinary trademark infringement." L'Oreal, 2013 WL 4400532 at *22 (citations omitted); see also Nomination Di Antonio E Paolo Gensini, 2009 WL 4857605 at *8 (collecting cases).

Because the complaint fails to allege any specific and substantial injury to the public interest over and above ordinary trademark infringement, and because pendant jurisdiction does not lie, plaintiffs' GBL § 349 claim should be dismissed.

## V.     THE COMPLAINT DOES NOT STATE A CLAIM UNDER GBL § 360-L

Similar to federal law, to state a dilution claim under the GBL, a plaintiff must show (1) ownership of a distinctive mark, and (2) a likelihood of dilution through the blurring of the product the mark has come to identify or tarnishing of an affirmative association that the mark has come to convey. See, e.g., E. Am. Trio Products, Inc. v. Tang Elec. Corp., 97 F.Supp.2d 395, 423 (S.D.N.Y. 2000) (citing Hormel Foods Corp. v. Jim Henson Productions, Inc., 73 F.3d 497, 506 (2d Cir. 1996)).

"With respect to claims for trademark infringement, trademark dilution, and unfair competition, New York State law largely tracks federal law in this area." Nomination Di Antonio E Paolo Gensini, 2010 WL 4968072 at *2 n.3 (internal punctuation omitted) (citing Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F.Supp.2d 402, 410 (S.D.N.Y. 2006)); see also Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F.Supp.2d 410, 421-23 (S.D.N.Y. 2002).

Because Lalique cannot show dilution of the brand for the reasons set forth above at

Point III, it does not state a claim under GBL § 360-l.

## VI.   PLAINTIFFS' UNFAIR COMPETITION CLAIMS SHOULD BE DISMISSED

A cause of action for unfair competition under New York common law "is nearly identical to a Lanham Act claim for trademark infringement, except that the New York claims requires a showing of bad faith." TechnoMarine, supra, 905 F.Supp. at 494; and see A&G Healthplans, Inc. v. Nat'l Network Servs., Inc., 99 CV 12153(GBD), 2003 WL 1212933, *3 (S.D.N.Y. Mar. 14, 2003) (collecting cases).

Plaintiffs set forth no additional factual allegations to support an inference of bad faith with respect to its sixth claim for relief, nor do they even recite the element of bad faith in conclusory fashion. (Cplt., ¶¶ 82-84). Because plaintiffs have neither sufficiently alleged a trademark violation, nor have they set forth any facts to support a reasonable inference that Metropolitan acted in bad faith with respect to Lalique's mark, plaintiffs' unfair competition claims should be dismissed. See, e.g., TechnoMarine, 905 F.Supp.2d at 494-95 (dismissing claim where plaintiff made "a mere recitation of the legal standard for a bad faith action.")

**CONCLUSION**

For the reasons set forth above, the Court should dismiss the complaint in its entirety.


Dated:  New York, New York
           November 15, 2013

WACHTEL MISSRY LLP


By:   /s/ John H. Reichman
         John H. Reichman
         Stella Lee*
       One Dag Hammarskjold Plaza
       885 Second Avenue, 47th Floor
       New York, New York 10017
       Tel.   (212) 909-9500
       Fax.  (212) 371-0320
       reichman@wmllp.com
       slee@wmllp.com

       *Attorneys for Defendant*

---

* Application for admission in the Southern District pending.